1-23-1137 WC Dakota Integrated Systems, Inc. Appellant by Michael Baggett v. Illinois Workers' Compensation Comm'n et al., Paul Allen, Appalachia by Stephen Seidman. Mr. Baggett, you may proceed. Good morning, Your Honors. Mike Baggett on behalf of the Appellant Dakota Systems Integrated. This is our appeal of the Commission and Circuit Court decision finding two things. One, that the petitioner suffered an injury that resulted in the need for surgery and whether or not the medical bill, specifically the $100,000 of prescription medication, indicated it was reasonable and necessary for the petitioner's treatment. Regarding the petitioner's injury itself, the petitioner alleged on April 19, 2018, he injured his left shoulder while working on an assembly line installing bumpers onto Ford motor vehicles. The petitioner states that he suffered a traumatic event while installing one of these bumpers and felt immediate left shoulder complaints. We don't dispute notice on the accident. However, we do dispute the nature and extent of the petitioner's injury and the Friberg in this matter. The respondent had the petitioner's supervisor, Renee Wisinski, testify regarding the mechanism of the alleged injury. She indicated that these bumpers were somewhere in the weight of 10 pounds and were gravity-fed to be installed. So, there was minimal lifting required to proceed with this job. The petitioner did treat with a company clinic immediately. He was diagnosed with a shoulder strain and then within a short period of time, the petitioner went to see Dr. Friberg. Dr. Friberg provided extensive treatment regarding the left shoulder, including prescribing well over $100,000 of prescription medication that the petitioner himself testified that he rarely used, nor was it any benefit to him. Regarding Dr. Friberg, Dr. Friberg relied upon an incorrect history of accident when providing his opinions. The respondent sent the petitioner to Dr. Walsh. Dr. Walsh indicated that the petitioner's history of accident and the alleged traumatic event did not cause the petitioner's degenerative conditions that were found in the MRI in the petitioner's shoulder. Both doctors agree that the petitioner had degenerative conditions in the shoulder that pre-existed any alleged incident on April 19, 2018. However, Dr. Friberg relies upon what appears to be some event and some type of repetitive trauma theory. Again, the history that was provided by the petitioner was contradicted by the respondent's witness, the petitioner supervisor who provided a description of the petitioner's job activities, which again does not require heavy lifting. These things are gravity-fed to be installed. Dr. Walsh, who was the respondent's IME doctor, opined that the petitioner's degenerative conditions were obviously well pre-existing and the alleged event that the petitioner's alleged accident could not have caused or did not cause the petitioner's condition. At best, the petitioner suffered a shoulder strain which resolved itself within a matter of months. Dr. Friberg, again, as I indicated, provides extensive treatment, none of which that seems to provide any relief or any concern. The petitioner underwent a short period of physical therapy, then stopped going to physical therapy and didn't undergo things, and then started a new position, left the employment of the respondent, and then began working for a trucking company in November of 2019, where the petitioner's condition continued to get worse after he began his employment. Again, these are all things that Dr. Friberg did not take into consideration in providing his opinions that the petitioner's condition is related to this single event on April 19, 2018. As a result, we request that, one, either the opinions of Dr. Friberg be ignored and the opinions of Dr. Walsh, who actually reviewed the complete medical record history and obtained a history from the petitioners, whose testimony and opinions are more credible, be found to be the one that petitioner only took. Two, the extensive medical prescriptions that were prescribed in this case, well over $100,000, where the petitioner's own testimony indicates that he rarely took it, nor did he find them to be helpful, should be overturned regarding what was reasonable and necessary for his treatment. So, in that regard, we request that this court find that the petitioner suffered, at best, a shoulder strain as a result of the single event on April 19, 2018, and, more importantly, review the extensive medical prescriptions that were prescribed in this case in the extent of over $100,000, where the petitioner's own testimony indicates he didn't need them, nor did he take them. We request that that part of the decision, as well, be overturned. Thank you for your time today, your honors. Can I ask one question, please? Yes. Where is it in the record that the claimant claimed he did not need the medication? I just saw that in my review of things. I believe it was his testimony outlined. It was in his testimony that he didn't take it sometimes so that it wouldn't impair his ability to drive a truck. Okay. He also testified, he also regardless one way or the other, whether he didn't take it because he was driving a truck, but he also testified that he didn't need it, which I think is evidence of itself that this isn't reasonable nor is it necessary, especially in the extent of $100,000 of things that were prescribed in this case. I might agree with you, but can you point me to where you find in the record that he states he didn't need it? Because I didn't find that. I've got cited page transcript 1528 in my brief, your honor, on page 21 of my original brief. I've got, however, the defendant testified did not take or even require the majority of the medications. I've cited 1528 for that reference. When you look at 1528, I think you're going to find that he said that he didn't take it when he was driving the truck. I don't think you're going to find that he said he didn't need it. Again, regardless, for whatever reason, why he didn't take it, he didn't take it. So it's different than saying it's one thing to say he didn't take it. It's another thing to say he didn't need it, that he testified that he didn't need it. I'm going with what my brief says, your honor, and I wouldn't have pulled that out of thin air, but I also am not going to argue with Judge Hoffman if he's read it differently. My interpretation of what he said was that he didn't need it. I don't have the exact finding in front of me at this second, but that's what I relied upon, and that's what we interpreted his testimony to say. I can make a suggestion to you. You have fixed the issues in your brief and that the decision of the circuit court is against the manifest weight of the evidence. We don't review the decision of the circuit court. We review the decision of the commission. I understand that, your honor. Any further questions from the court? Okay, thank you. Mr. Seidman, you may respond. Thank you very much, your honors. I'd like to first point out to somebody I respect very much, I disagree with his interpretation here. Newsflash, the reason that the petitioner had to take or the appellee had to take a medication was because surgery was not authorized because there was a record review from Dr. Walsh, not even an examination, which disagreed with, number one, whether or not the condition was degenerative, whether or not surgery that was required was as a result of this particular work accident because it was such a quote-unquote light object. In point of fact, if indeed the surgery would have been approved timely, early, this medication would not be used. The sole basis of the $130,000 response or declination of the medication from the respondent seems to be wholly because Dr. Walsh said that this was not related to a work accident and therefore no surgery was necessitated. And in point of fact, there was no utilization review ever on these drugs. There was no evidence extent whatsoever at the commission. So that would be the first point of contention. Second of all, I know I do not need to repeat the manifest weight standard, but the credibility was already assessed at the commission. Specifically, the commission adopted the arbitrator's findings as to the credibility of the witness, as to the credibility of Dr. Friedberg versus Dr. Walsh, and actually did suggest that the witness, who was the supervisor, said that the petitioner actually testified consistently what the job duties were. So what was this man doing? He was repetitively 10 to 20-pound bumper covers, taking off each of the conveyor belt, stepping right, placing the cover on the next machine, including installing four clamps, turning around, grabbing two chrome pieces, turning back, screwing them in, removing bumper covers off the machine, taking three steps right, and placing the finished part onto another conveyor belt. He'd been doing this repeatedly for 11 hours a day that day, the date of the occurrence, when he lifted one piece and felt his shoulder pop. There was no pre-existing evidence extant at the commission that showed any pre-existing treatment of any sort whatsoever. In fact, Dr. Friedberg testified that the accident occurred at work and occurred when the petitioner was putting a part on the conveyor belt. And in fact, there was a consistent course of treatment beginning immediately after the accident with the company clinic, all the way towards Dr. Friedberg. So when we talk about manifest weight, in my opinion, respectfully, the manifest weight, as it was described to me once, was whether anybody could sustain an opinion with regard to that particular fact. And I think that the record is replete with evidence, actual evidence, not innuendo or not Dr. Walsh's suppositions that indeed the accident was a cause or contributing factor to this man's injury, that he required the surgery, which was finally awarded by the arbitrator. And finally, that the drugs that were given to him were given to him with the hopes that it would ameliorate some of the pain because he wasn't being prescribed or authorized to have the surgery. Finally, with regard to his trucking, I believe your honors are the way I read it was he didn't take it because he couldn't take it. Here's a gentleman, a hard worker, goes out, gets a job, doesn't stay on TTD, went back to an accommodated position until it wasn't accommodating anymore, found a job that was within the restrictions and could not take the drugs. He wanted the surgery, he wanted to work, and that's where we are left when you have opinions that are not credible and as found as such Dr. Walsh's opinion by the commission. Thank you. That's all I have. Any questions for Mr. Seidman from the court? No? Okay. Thank you, Mr. Seidman. Thank you. Mr. Baggett, you may reply. Counsel's actually pointed out exactly what my argument was. He's alleging this is now a repetitive trauma. That's not what the petitioner claimed when he told Dr. Friedberg and Dr. Walsh. Post-counsel just said he's working for 11 hours and he did his repetitive job. That's not what this case is about. They're trying to now shoehorn this repetitive trauma claim and it's not what anyone testified to. They testified to it was a traumatic event, one incident on April 19, 2018. Regarding the medication, the standard is what's reasonable and necessary. He didn't take it. It wasn't reasonable and therefore it wasn't necessary. He told you himself he didn't take this medication. Counsel, I think he testified that he takes them when needed but doesn't take them when he's driving his truck. Okay. I don't think he ever said he didn't need them. He also said he didn't take them but yet when he's driving his truck. Okay. He started driving in November of 2019 and these bills are over $100,000. He testified himself he wasn't taking them. Well, I think your argument is about the context. How broad is the context to that statement, Mr. Baggett? Well, again, you have somebody who has testified that he, whatever purposes, whether he took them because he didn't take them because he was driving or because he didn't need them, he didn't take them. They weren't necessary. So, to have $130,000 and Counsel, why does it follow that if a person doesn't take his medicine, he didn't need it? How do you bridge that logically? If I'm required to take medicine for pain and I decide I don't want to take pain medication because I'm driving a truck, does that mean I don't need pain medication and mean I'm not in pain? Yes, because you're not taking them. If you were taking them for the amount of time that they were, I would agree with you, but he testified he wasn't taking them. It wasn't a matter of him. I took him now and then. He said he wasn't taking them and yet they were continuing to be billed at the extent of over $100,000. I don't know what else to say other than he said he wasn't taking them. I get medication sometimes too. I don't take it all, but I don't go back and refill it if I'm not taking it. Again, going back to Counsel himself is trying to now shoehorn this into a repetitive trauma case, which is not what was testified to at all. I thank you for your time, Your Honors, and we request that the decision of the Commission be overturned, specifically regarding that the prescription medication was reasonable or necessary based on the Petitioner's own testimony. Thank you, Mr. Baggett. Any questions from the Court for the questions? Well, thank you, Counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue, and at this time the Clerk of our Court will escort you out of our remote courtroom. Thank you. Have a good day. Thank you very much. Thank you, Your Honors. Have a good day.